IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **RAMÓN L. AYALA-RODRÍGUEZ** a/k/a "Daddy Yankee" "DY" <br><br> and <br><br> **El CARTEL RECORDS, INC.** <br><br> Plaintiffs <br><br> v. <br><br> **MIREDDYS GONZÁLEZ-CASTELLANOS** <br><br> Defendant | **CIVIL NO. 25-** <br><br> Nature of Claim: Declaratory Judgment of Non-Infringement of Trademark; preliminary and permanent injunction <br><br> Plaintiffs Demand Trial by Jury |

<u>**VERIFIED COMPLAINT**</u>

**COME NOW** plaintiffs, Ramón L. Ayala-Rodríguez and El Cartel Records, Inc., through the undersigned counsel, bring this Complaint against defendant, Mireddys González-Castellanos, and respectfully state, allege and pray as follows:

**NATURE OF THE ACTION**

1.  This case is yet another unfortunate chapter in the legal saga involving Ramón Ayala-Rodríguez ("Ayala"), a globally recognized artist best known by his nicknames "Daddy Yankee" and "DY," and his former spouse, defendant Mireddys González-Castellanos ("González"). In her latest effort to thwart Ayala's continued artistic success, González is now, incredibly, challenging Ayala's right to use his trademark names, "Daddy Yankee" and "DY," among others. González has threatened to sue Ayala for alleged violations of the Lanham Act, 15 U.S.C. 1051, *et seq.*, should he use or commercialize in any way the marks "Daddy Yankee" and "DY" (the "Marks").

2. Contrary to González's contentions, she has no personal right whatsoever to use such Marks, let alone to preclude Ayala (or plaintiff El Cartel Records, Inc.) from using them.

3. As will be shown, the relevant Marks were first used by Ayala himself. Indeed, as far back as the early 1990s, Ayala was already publicly known under the name "Daddy Yankee," which was the name he used for all artistic purposes, including the selling of his music as well as his appearances at concerts, television programs, etc. The Marks were later assigned to El Cartel Records, Inc. ("El Cartel"), a Puerto Rico corporation, which Ayala currently controls and is its President, which is reflected in a State Court Judgment entered by stipulation between Ayala and González. Upon taking control of the entities, Ayala found them in complete disarray, to say the least, therefore, El Cartel began its corporate dissolution. Accordingly, El Cartel, ceased using the Marks in commerce, which were transferred back to the original user, Ayala.

4. On July 24, 2025, González sent a communication via her counsel in which she asserted that she has a proprietary right over the relevant marks and further sought to preclude Ayala from exercising his rights over them. **Exhibit 1**

5. On September 24, 2025, González filed a request for an extension of time to oppose Ayala's trademark application for the mark "DY" and, on October 2, 2025, González filed a similar request for an extension of time to oppose Ayala's trademark application for the mark "Daddy Yankee", before the Trademark Trial and Appeal Board ("TTAB"), with the stated purpose of pursuing a formal opposition proceeding. **Exhibit 2-3**. Notably, the United States Patent and Trademark Office ("USPTO") has already approved for publication other applications filed by Ayala for those marks in different classes, which are likewise subject to the same risk of opposition and interference by González.

6. Ayala and El Cartel bring forth this declaratory judgment action in order to have

this Court determine that the use by Ayala of the "Daddy Yankee" and "DY" marks is entirely lawful inasmuch as any ownership interest El Cartel could have over such marks ceased upon dissolution of El Cartel and, as a result, was legally transferred to Ayala. Finally, plaintiff Ayala requests preliminary and permanent injunctive relief against González, enjoining her from precluding the free use by Ayala of the "Daddy Yankee" and "DY" marks, which are names solely associated with Ayala's public persona.

7.  Needless to say, Ayala never expected that it would be necessary to seek court intervention in order to ensure that he—in his personal capacity—is free to use his artistic name for any and all legal purposes, as he has done throughout his over 30-year long artistic career. Unfortunately, given González's direct threat of suit, interference with the proceedings before the USPTO, and the chilling effect such threats have over Ayala's use of the Marks, as well as the threat to the continued value of the Marks, which are inextricably intertwined with Ayala's artistic persona, court intervention is necessary to declare the parties' rights with respect to the "Daddy Yankee" and "DY" marks.

## THE PARTIES

8.  Plaintiff Ramón L. Ayala-Rodríguez is a renowned Puerto Rican artist commonly known by the artistic name "Daddy Yankee" and "DY". Ayala is a resident of Puerto Rico. Ayala has been the President of El Cartel since December 20, 2024.

9.  Plaintiff El Cartel Records, Inc. is a Puerto Rico corporation with its principal place of business in Puerto Rico. El Cartel was dissolved on April 23, 2025, but has standing to bring this action as part of its corporate dissolution process pursuant to Art. 9.08 of the Corporations Act of Puerto Rico, 14 P.R. Laws Ann. §3708. El Cartel appears in this action as an indispensable party in order for the court to be able to issue specific relief through a decree of a conclusive character,

3

as further detailed below.

10. Defendant Mireddys González-Castellanos is a resident of Puerto Rico. González is Ayala's former spouse and was the President and a Director of El Cartel until December 20, 2024.

**JURISDICTION AND VENUE**

11. This is an action for declaratory judgment of non-infringement of trademarks arising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, among other remedies requested.

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, 1367, and 2201 as well as 15 U.S.C. § 1121.

13. A justiciable controversy exists between the parties based on González's threats to seek judicial relief in order to preclude Ayala from using the marks "Daddy Yankee" and "DY," as well as her filing of requests for extensions of time before the TTAB with the stated purpose of initiating formal opposition proceedings against Ayala's trademark applications.

14. In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), the Supreme Court laid out the essential requirements for Article III standing in the context of a suit brought under the Declaratory Judgment Act. In essence, the standing requirements outlined in *MedImmune* are: (1) that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and (2) that it be real and substantial and admit of specific relief through a decree of a conclusive character. *Id*. at 127.

15. The standing requirements outlined in *MedImmune* have been adopted in the Trademark context, including by this Honorable Court. *See Castillo-Perez v. Bosques-Cordero,* 2011 U.S. Dist. LEXIS 170966 at *39-40 (D.P.R. July 15, 2011), Report and Recommendation

4

adopted by the court and Judgment entered in *Castillo-Perez v. Bosques-Cordero*, No. 10-1584 (JAF), 2011 U.S. Dist. LEXIS 171067 (D.P.R. Aug. 30, 2011).

16. In *Castillo-Perez*, it was held that cease and desist letters and threats to sue involving the use of certain marks provided standing to sue even if those threats were not followed up. *Id*. at *43 ("Although they did not follow through on it, defendants' saber-rattling demonstrates that the possibility of litigation over the disputed mark is substantial, immediate, and real within the meaning of *MedImmune*.").

17. On July 24, 2025, counsel for González forwarded a letter to counsel for Ayala claiming that certain filings made by Ayala or his representatives before the United States Patent and Trademark Office ("USPTO") were not authorized by González. **Exhibit 1** at 1.

18. In said communication, counsel for González expressly stated that said actions represented a violation of the Lanham Act. *Id*. at 2.

19. Further, said communication demands that Ayala:

   (1) Immediately cease and desist from any use, commercialization, exploitation, assertion of sole ownership or control of the Marks "Daddy Yankee", "DY", "Sikiri", "Dura", "El Cangri", "El Cartel The Big Boss", "Big Boss", "Los Cangris", "Legendaddy", and "El Cartel Records";

   (2) Withdraw or suspend the Marks applications filed with the USPTO under Section 1(a) for these Marks;

   (3) Acknowledge in writing that no future applications for trademarks derived from or confusingly similar to the intellectual property portfolio historically associated with El Cartel—including any variations or abbreviations of "Daddy Yankee" or marks tied to iconic projects such as "Barrio Fino"—will be filed without prior written consent from Mrs. González or a mutually agreed resolution of ownership rights.

   (4) Enter into good-faith discussions with our client regarding the division and/or co-management of all intellectual property assets developed during the life of El Cartel;

      (5) Provides written confirmation of full compliance with these demands by no later than July 29, 2025—five (5) calendar days from the receipt of this letter.

*Id*. at 2-3.

20. Finally, the cease and desist letter concludes by stating the following:

> Absent full compliance by the deadline, our client will have no choice but to pursue further legal action to protect her rights and mitigate the damages by these violations.
>
> This letter is not a complete statement of all facts or applicable laws. Our client expressly reserves all rights and remedies available to her under law, including the right to seek injunctive relief and recover monetary damages. We trust that you will approach this matter with the seriousness it deserves and look forward to your timely response.

*Id*. at 3.

21. In sum, González, through her communication, (1) has accused Ayala of violating the Lanham Act; (2) has demanded that Ayala immediately cease and desist from the use of the relevant marks, including but not limited to the "Daddy Yankee" and "DY" marks; and (3) has expressly threatened to sue Ayala for failure to comply with her demands.

22. These express allegations of violations of Trademark Law, cease and desist request and threats to sue present a definite and concrete dispute, touching the legal relations of parties having adverse legal interests.

23. These threats have materialized through the filing by González of requests for extension of time to oppose the registration of the marks (in certain classes) "DY" and "Daddy Yankee," filed by González on September 24, 2025 and October 2, 2025, respectively.

24. The declaratory relief sought herein, to the effect that González does not have any personal rights to the Marks and cannot preclude their use by Ayala, in his personal capacity and/or as President of El Cartel, would certainly provide specific relief through a decree of a conclusive

6

character as to the rights to the Marks at issue and Ayala's ability to continue using them. The contrary conclusion would have a chilling effect on the use of the relevant Marks, which not only harms Ayala, but the value of the Marks themselves in commerce.

25. Venue is proper in this judicial district under 28 U.S.C. §1391(b) because defendant resides in this district and a substantial portion of the events giving rise to the claims for relief stated in this Complaint occurred in this judicial district.

## THE FACTS

26. Ayala is a globally recognized artist, best known by his nicknames Daddy Yankee and DY. After more than 30 years of artistic career as Daddy Yankee and/or DY, Ayala is barely referenced by his first name to the point that, everywhere he goes, he is called by Daddy Yankee or DY universally.

27. Ayala began his journey into the world of *reggaetón* music at a remarkably young age. His exceptional vocal talent and lyrical ingenuity quickly propelled him into the public eye.

28. Indeed, by the early 1990s, Ayala had already adopted the stage name Daddy Yankee and DY.

29. By that time, long before El Cartel had even been created, Ayala was publicly and pervasively known under the name "Daddy Yankee," which was the name he used for all artistic purposes, including the selling of his music as well as his appearances at concerts, television programs, etc.

30. Ayala is the only natural person that has continuously used the marks "Daddy Yankee" and "DY" in commerce through his artistic career. Over the years, Ayala built an extensive portfolio of artistic works—valuable intangible assets he actively developed, commercialized, and protected through savvy entrepreneurial strategies.

31. To safeguard and manage his intellectual property and business ventures, Ayala established a series of corporate entities, one of which was El Cartel, created by him to serve as his loan-out entity solely for the purpose of managing and conducting his professional services in the entertainment industry. From its inception, El Cartel functioned as a business platform through which Ayala's artistic career was managed. As both the public face and the primary source of revenue for El Cartel, Ayala has always been its central and indispensable figure.

32. The "Daddy Yankee" trademark was first assigned to El Cartel through a written assignment on August 30, 2005.

33. On February 24, 2022, the "DY" trademark was assigned to El Cartel via a written *Assignment of Trademark*.

34. To allow him to focus fully on his artistic endeavors and creative output, Ayala had entrusted the day-to-day management of El Cartel's internal affairs to his then-wife, González.

35. After a series of judicial proceedings before the Court of First Instance of the Commonwealth of Puerto Rico, San Juan Superior Part, in the consolidated cases of *Ayala Rodríguez v. González Castellanos et al.*, Civil No. SJ2024CV11465 and *Ayala Rodríguez v. González Castellanos et al.*, Civil No. SJ2024CV11466, Ayala and González reached a stipulation, incorporated into a final Judgment, pursuant to which Ayala became the president of El Cartel on December 20, 2024.

36. After assuming the presidency and control over El Cartel as detailed above, on April 21, 2025, Ayala formally approved the dissolution of El Cartel in accordance with Article 9.05 of the Puerto Rico General Corporations Act, P.R. Laws Ann. tit. 14 § 3705.

37. Prior to the dissolution, on February 28, 2025, Ayala decided that El Cartel would no longer be involved in the management of his artistic career.

8

38. The Puerto Rico Department of State officially dissolved El Cartel on April 23, 2025.

39. El Cartel ceased all use of the Marks at least as of April 23, 2025, in light of its dissolution.

40. As a result of its dissolution and cessation of use of the Marks in commerce, El Cartel assigned any and all interest or rights it may have had over the Marks back to Ayala, who is the only natural person that has used such Marks in commerce.

41. Ayala has consistently been using the Marks, for example, by promoting his songs on streaming platforms such as Spotify, Apple Music, etc., under each of the Marks. He has also advertised his songs in various social media platforms by using each of the Marks.

42. Further, as Ayala has reinserted into the entertainment industry, his interactions with industry players generally have some bearing with the names through which he as cemented his career: Daddy Yankee and/or DY.

43. After the conclusion of the marital relationship with his ex-wife, she has gradually and consistently attempted to set roadblocks in the artistic career of Ayala.

44. As such, on July 24, 2025, González, through her counsel, sent a letter to Ayala, through his counsel, demanding that Ayala:

> i. Immediately cease and desist from any use, commercialization, exploitation, assertion of sole ownership or control of the marks "Daddy Yankee", "DY", "Sikiri", "Dura", "El Cangri", "El Cartel The Big Boss", "Big Boss", "Los Cangris", "Legendaddy", and "El Cartel Records";
>
> ii. Withdraw or suspend the marks' applications filed with the USPTO under Section 1(a) for these marks;

      iii. Acknowledge in writing that no future applications for trademarks derived from or confusingly similar to the intellectual property portfolio historically associated with El Cartel—including any variations or abbreviations of "Daddy Yankee" or marks tied to iconic projects such as "Barrio Fino"—will be filed without prior written consent from Mrs. González or a mutually agreed resolution of ownership rights.

      iv. Enter into good-faith discussions with González regarding the division and/or co-management of all intellectual property assets developed during the life of El Cartel;

      v. Provide written confirmation of full compliance with these demands by no later than July 29, 2025-five (5) calendar days from the receipt of this letter.

**Exhibit 1** at 2-3.

45. Finally, the cease and desist letter concludes by stating the following:

Our client expressly reserves all rights and remedies available to her under law, including the right to seek injunctive relief and recover monetary damages.

Id. at 3.

46. González's request appears to be based on the incorrect premise that she has some sort of personal ownership right over the use the Marks.

47. González's efforts seek to preclude Ayala from doing what he has done since the beginning of his artistic career: promote himself and his brand by using the name under which he has always been known and recognized.

48. Plaintiffs file this declaratory judgment action in order to have this court determine that Ayala's use of the "Daddy Yankee" and "DY" trademarks is entirely lawful, as El Cartel

ceased using the Marks in commerce and any trademark rights were legally transferred to Ayala, and that González does not have a personal ownership interest in any of the Marks and cannot preclude Ayala from using the Marks in commerce.

### FIRST CAUSE OF ACTION
**(Declaratory Judgment)**

49. All prior allegations are incorporated by reference herein.

50. Plaintiffs seek a declaratory judgment under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, holding that: (1) Ayala is entitled to use the "Daddy Yankee" and "DY" trademarks, as El Cartel ceased using the Marks in commerce and these were lawfully assigned to Ayala; and (2) González lacks any personal ownership interest over the use the Marks.

51. Ayala is the only natural person that has used and uses the marks in commerce. Ayala has consistently been using the Marks, for example, by promoting his songs on the Spotify, Apple Music, etc. platforms under each of the Marks. He has also advertised his songs in various social media platforms by using each of the Marks.

52. All of the Marks belong to Ayala and/or have been lawfully assigned to Ayala.

53. Gonzalez's own cease and desist letter admits that any trademark rights regarding the Marks involve Ayala, as user of the Marks, and plaintiff El Cartel. **Exhibit 1** at 2.

54. Neither Ayala nor El Cartel have ever assigned any interest regarding the Marks to González in her personal capacity.

55. It is clear that González does not have any personal rights to the Marks, and cannot avail herself of the Lanham Act to enjoin Ayala (or El Cartel) from "any use, commercialization, exploitation, assertion of sole ownership or control of" the Marks, as her July 24, 2025 cease and desist letter demands and threatens. In addition, González cannot assert any rights before the

TTAB, the USPTO or at common law, as she is not, and has never been, the party using the Marks in commerce.

56. As a matter of fact, González's apparent position is contrary to a recent decision issued by the Puerto Rico Supreme Court in the trademark context in *Colón Vázquez v. Báez Pérez*, 214 P.R. Dec. 1062 (2024).

57. In *Colón Vázquez*, interpreting both the Lanham Act and local Puerto Rico trademark law, the Supreme Court of Puerto Rico held that, if a corporation owns a trademark and that corporation is dissolved, the corporation **continues** to be the owner of the trademark even after dissolution.

58. The *Colón Vázquez* court further held that the ownership rights to a mark cannot be "fragmented" by splitting the trademark up amongst the different investors, partners and/or owners of the corporation, because doing so would run afoul of a trademark's goal, which is to have a distinctive quality. Citing a well-known trademark treatise, the court further noted that "[a] trademark cannot be sliced up and ownership of pieces of it apportioned among different entities." *Id*. at 1088 (citing 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, sec. 2:15 (2023)); *See also BSP Agency LLC v. Katzoff (In re KG Winddown, LLC)*, 632 B.R. 448, 489 (Bankr. S.D.N.Y. 2021) ("A trademark 'is a very unusual and delicate kind of property,' and must be assigned in full or not at all.") (quoting 1 *McCarthy on Trademarks & Unfair Competition* § 2:15).

59. Accordingly, the *Colon-Vázquez* court rejected the plaintiffs' contention that they were the owners of the trademark because they were partners in the corporation. The court held that the corporation, despite having been dissolved, continued to be the owner of the trademark. Assuming that El Cartel is still the owner of the Marks (which as we will see below is not the

case), any interest in the Marks, even after dissolution, would remain with El Cartel. Hence, González has no personal interest in the Marks and cannot avail herself of the Lanham Act or proceedings before the TTAB to preclude the use of the Marks by Ayala, with the chilling effect over the Marks and irreparable harm this would cause, as further detailed below. The right with respects to the marks rested in El Cartel Inc. Presuming, for the sake of argument, that even if Gonzalez could have some interest, it certainly isn't over the mark but merely as to the economic component in the legal entity. At most, any claim would relate to the civil fruits of the marriage or the income generated by the entity during the marriage—not to ownership or control of the Marks. Notably, despite administering El Cartel for decades, González accounted for no trademark-related income or valuation in the entities through December 2024. Regardless of any potential pursuit of an economic interest in the entity by Gonzalez, the above stated conclusion is supported by Article 512 of the Civil Code, P.R. Laws Ann. tit. 31 § 6964 ("Rights inherent to a person are those created, recognized, or received by reason of the identity and individuality of the spouse who holds or receives the rights, or based on their personal qualities. Although these rights retain their highly personal character, the fruits or periodic earnings accrued during the marriage are common and joint property, unless otherwise provided by law.")

60. As such, El Cartel was entitled to transfer any interest it may have had in the Marks to its original creator and user, Ayala, as it did, given that it ceased conducting operations and using the Marks and Ayala decided that El Cartel would no longer be involved in his artistic career.

61. Accordingly, the Court should issue a declaratory judgment holding that: (1) Ayala is entitled to use the Marks, as El Cartel ceased its commercial use of the Marks upon its dissolution and the Marks were lawfully assigned back to Ayala; and (2) González lacks any personal ownership interest over the use of such Marks.

## SECOND CAUSE OF ACTION
**(Preliminary and Permanent Injunction)**

62. All prior allegations are incorporated by reference herein.

63. Ayala's artistic persona is recognized all over the world as "Daddy Yankee" and "DY."

64. These names are inextricably intertwined with Ayala's artistic career, to the extent that people recognize him as Daddy Yankee or DY and not by his real name, in and out of stage.

65. Given that as detailed above, González does not have a personal interest in any of the Marks, plaintiff Ayala is likely to prevail in an action to enjoin González from precluding Ayala to use the names Daddy Yankee and DY in any way, as she has demanded he stop doing under threat of suit and through filings before the TTAB on September 24, 2025 and October 2, 2025.

66. Failure to issue injunctive relief, as requested herein, would not only cause irreparable harm to Ayala's artistic career, which is inextricably intertwined with the names or marks "Daddy Yankee" and "DY," but would cause harm to the Marks themselves, which could become abandoned as a result of their lack of continuous use in commerce or appropriated by others. *See*, *Quality Semiconductors, Inc. v. Qlogic Corp.*, No. C-93 20971 JW EAI, 1994 U.S. Dist. LEXIS 7101, at *12 (N.D. Cal. May 13, 1994) ("The injury is to plaintiffs [sic] interest in having exclusive control over the symbol of its own reputation. The irreparable harm is the damage which will be done to plaintiff's mark itself.").

67. Specifically, in the coming days and weeks, Ayala is scheduled to appear and perform at numerous activities – such as at the *Premios Billboard* on October 23, 2025 – for which he needs to be able to promote himself under the "Daddy Yankee" and "DY" brands. Further, as his career continues to develop and expand, Ayala will continue facing the perils of Gonzalez

constant efforts to thwart his career by trying to create confusion and uncertainty with Daddy Yankee and DY.

68. Also in jeopardy are business opportunities related to Ayala's artistic endeavors in which the uncertainty and potential confusion for the "Daddy Yankee" and "DY" brands are central.

69. If Ayala is not able to promote himself and his music under the names that he has been known throughout his decades-long artistic career, it will inevitably cause confusion to his fandom and to the general public, which will jeopardize his artistic career.

70. "In a trademark case, injuries that may be irreparable include **harm to reputation and goodwill** and **loss of control over the mark**." *Rooterman, LLC v. Belegu*, 778 F.Supp.3d 298, 306 (D.Mass. 2025) (emphasis ours).

71. González's affirmative acts of not only threatening litigation but also specifically making filings before the USPTO – seeking extensions of time to oppose the registration of the marks (in certain classes) "DY" and "Daddy Yankee" – not only threaten the reputation and goodwill of both Ayala and the Marks, but also directly threaten Ayala's control over the Marks.

72. The loss that would be suffered as a result of not being able to promote himself under the "Daddy Yankee" and "DY" marks is not merely monetary. In this fast-paced day and age, where social media and branding are fundamental to an artist's image and career, this type of confusion over an artist's name and brand can have devastating consequences for both the artist and the brand, leading to the loss of countless opportunities and public exposure.

73. Thus, precluding Ayala from using the Marks will cause irreparable harm. Moreover, under the Trademark Modernization Act of 2020, "a trademark plaintiff that demonstrates a likelihood of success is entitled to a rebuttable presumption of irreparable harm."

*BTL Industries, Inc. v. Rejuva Fresh LLC*, 1:23-cv-00032-SDN, 2025 U.S. Dist. LEXIS 88482, at **31-32, 2025 WL 1333524 (D.Me. 2025), citing 15 U.S.C. § 1116(a) and *SoClean, Inc. v. Sunset Healthcare Sols., Inc.*, 554 F. Supp. 3d 284, 307 (D. Mass. 2021). "The First Circuit has not addressed the mechanics of applying this rebuttable presumption; however, the Third Circuit has explained that once a plaintiff establishes a likelihood of success, 'the burden of production shifts to the defendant to introduce evidence sufficient for a reasonable factfinder to conclude that the consumer confusion is unlikely to cause irreparable harm.'" *BTL Industries*, *supra*, citing *Nichino Am., Inc. v. Valent U.S.A. LLC*, 44 F.4th 180, 186 (3d Cir. 2022).

74. González would not be harmed at all by Ayala's use of the marks "Daddy Yankee" and "DY".

75. "In trademark cases, the public interest is the public's right not to be deceived or confused." *Warner Bros. Entm't, Inc. v. The Global Asylum, Inc.*, No. CV 12-9547 PSG CWX, 2012 U.S. Dist. LEXIS 185695, 2012 WL 6951315, at *23 (C.D. Cal. Dec. 10, 2012).

76. The public interest in this case will not be affected in any way by the grant of an injunction. To the contrary, denial of the injunctive relief requested and the chilling effect González's actions can have on the use by Ayala of his own artistic or trade names could certainly cause deception or confusion, to the extent that the names or marks "Daddy Yankee" and "DY" cease to be associated with Ayala, are appropriated by third parties as a result of lack of use or Ayala is put in the position to have to change his artistic name in order to continue his artistic career.

77. Plaintiffs request that defendant González be preliminarily and permanently enjoined from precluding the use by Ayala, in his personal capacity, of the marks "Daddy Yankee" and "DY."

**JURY DEMAND**

78. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury on all issues so triable.

**WHEREFORE**, plaintiffs request a declaratory judgment holding: (1) that Ayala is entitled to use the "Daddy Yankee" and "DY" marks, as El Cartel ceased using these Marks in commerce upon its dissolution and these Marks were lawfully assigned to Ayala; (2) that defendant González lacks any personal ownership interest over the use of said Marks, together with a preliminary and permanent injunction order enjoining González from further asserting ownership rights over the marks "Daddy Yankee" and "DY" and/or precluding the use by Ayala of the marks "Daddy Yankee" and "DY", including but not limited to the filing of additional documents before the TTAB. Plaintiffs also seek all costs and attorneys' fees incurred by plaintiffs in this litigation, as well as any other relief available at law and equity deemed just and proper by this Court.

**DECLARATION UNDER PENALTY OF PERJURY**

I, Ramón L. Ayala-Rodríguez, single, of legal age and resident of San Juan, Puerto Rico, hereby state the following:

1. That my personal circumstances are as stated above.
2. That I have reviewed this Complaint and its exhibits.
3. That the facts stated herein are true to the best of my knowledge.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

In San Juan, Puerto Rico this 6 day of October, 2025.

_____
Ramón L. Ayala-Rodríguez

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, on this 6 day of October, 2025.

**I HEREBY CERTIFY** that on this same date I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send electronic notification of such filing to all counsel of record.

**ANTONETTI MONTALVO & RAMIREZ-COLL**
*Counsel for Plaintiff Ayala*
P. O. Box 13128
San Juan, PR  00907
Tel. (787) 977-0312 Fax: (787) 977-0323

**s/ José L. Ramírez- Coll**
JOSE L. RAMIREZ-COLL
USDC-PR No. 221702
jramirez@amrclaw.com

*Attorney for Plaintiff El Cartel*



PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433

***s/JUAN J. CASILLAS-AYALA***
JUAN J. CASILLAS-AYALA
USDC-PR No. 218312
jcasillas@cstlawpr.com

***s/VÍCTOR O. ACEVEDO-HERNÁNDEZ***
VICTOR O. ACEVEDO-HERNÁNDEZ
USDC-PR No. 227813
vacevedo@cstlawpr.com

s/***JUAN C. NIEVES-GONZÁLEZ***
JUAN C. NIEVES-GONZÁLEZ
USDC-PR No. 231707
jnieves@cstlawpr.com