# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **RAMÓN L. AYALA-RODRÍGUEZ (a/k/a "Daddy Yankee" and "DY")** and **El CARTEL RECORDS, INC.**<br>Plaintiffs<br><br>v.<br><br>**MIREDDYS GONZÁLEZ-CASTELLANOS,**<br>Defendant | **CIVIL NO. 25-1531**<br><br>Nature of Claim: Declaratory Judgment of Non-Infringement of Trademark; preliminary and permanent injunction<br><br><br>Plaintiffs Demand Trial by Jury |

## MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION

**TO THE HONORABLE COURT**:

**COME NOW** plaintiffs, Ramón L. Ayala-Rodríguez and El Cartel Records, Inc., through the undersigned attorneys, and respectfully state and pray as follows:

## I.      INTRODUCTION

Plaintiff Ramón L. Ayala-Rodríguez ("Ayala") is a renown Puerto Rican artist commonly known by the artistic name "Daddy Yankee" and "DY." Ayala has been the President of El Cartel Records, Inc. ("El Cartel") since December 20, 2024. Throughout his decades-long career, Ayala has consistently used the marks "Daddy Yankee" and "DY" in connection with his music, live performances, and related artistic endeavors. These marks have been continuously used in commerce to identify Ayala and his work.

Ayala began his journey into the world of *reggaetón* music at a remarkably young age. His exceptional vocal talent and lyrical ingenuity quickly propelled him into the public eye. Indeed, by the early 1990s, Ayala-Rodríguez was already known in artistic circles as Daddy Yankee. Over the years, Ayala built an extensive portfolio of artistic works, valuable intangible assets he actively developed, commercialized, and protected through savvy entrepreneurial strategies.

After a series of judicial proceedings before the Court of First Instance of the Commonwealth of Puerto Rico, San Juan Superior Part, in the consolidated cases of *Ayala Rodríguez v. González Castellanos et al.*, Civil No. SJ2024CV11465 and *Ayala Rodríguez v. González Castellanos et al.*, Civil No. SJ2024CV11466, Ayala and González reached a stipulation, incorporated into a final Judgment dated December 26, 2024, pursuant to which Ayala assumed the presidency and control over El Cartel on December 20, 2024.

However, González, apparently intent on thwarting those efforts, is attempting to preclude Ayala from the use of certain marks, including but not limited to the marks "Daddy Yankee" and "DY," which are both inextricably intertwined with his artistic persona. Specifically, on July 24, 2025, counsel for González forwarded a letter to counsel for Ayala claiming that certain filings made by Ayala or his representatives before the United States Patent and Trademark Office ("USPTO") where not authorized by González. Docket No. 1-4. Further, said communication alleged that Ayala was in violation of the Lanham Act and demanded that Ayala "[i]mmediately cease and desist from any use, commercialization, exploitation, assertion of sole ownership or control of the Marks 'Daddy Yankee', 'DY' and others. *Id.* at 2. Finally, said communication concluded by stating that, absent full compliance with González's demands, González "will have no choice but to pursue further legal action to protect her rights and mitigate the damages by these violations." *Id.* at 3.

In fact, on September 24, 2025, González filed a request for an extension of time to oppose Ayala's trademark application for the mark "DY," and on October 2, 2025, González filed a similar request for an extension of time to oppose Ayala's trademark application for the mark "Daddy Yankee," before the Trademark Trial and Appeal Board ("TTAB"), with the stated purpose of pursuing a formal opposition proceeding. Docket Nos. 1-5; 1-6. Notably, the USPTO has already

approved for publication other applications filed by Ayala for related marks, which are likewise subject to the same risk of opposition and interference by González.

In the coming weeks, Ayala is scheduled to appear and perform at several public events. Among these is the **Premios Billboard**, set for **October 23, 2025**, where he is expected to participate in activities related to his artistic career. Ayala also maintains ongoing business opportunities tied to his music and public image, all of which involve the use of the "Daddy Yankee" and "DY" marks. Ayala's career includes significant public engagement through social media, branding, and promotional activities. His professional identity and public recognition are closely associated with the names "Daddy Yankee" and "DY," which he has used for many years.

As such, González, by claiming a **_personal_** right to the marks "Daddy Yankee" and "DY" (hereinafter collectively the "Marks") and expressly manifesting her intent to oppose their registration before the TTAB, is attempting to preclude Ayala from freely using them in commerce. This action by González has caused and threatens to cause irreparable damage to Ayala, as these Marks are inextricably intertwined with Ayala's artistic persona and professional career and are essential for him to promote his own brand and continue developing his musical career. González's actions also harm the Marks themselves, given that, lacking court intervention, they will irreparably lose value or could become abandoned for lack of use and/or appropriated by third parties.

For the foregoing reasons and as further explained in this motion and memorandum of law, plaintiffs request that the Court enter a preliminary injunction enjoining González from taking any action to preclude the use of the marks "Daddy Yankee" and "DY" by Ayala, as she lacks any personal interest or right to the same.

## II.    ARGUMENT

## A.    Legal standard

Section 34(a) of the Lanham Act provides in part as follows:

The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order.

15 U.S.C. § 1116(a)

The United States Court of Appeals for the First Circuit has set forth a four-part test for trial courts to use when considering whether to grant preliminary injunction requests. *Lanier Prof. Serv's, Inc. v. Ricci*, 192 F.3d 1 (1st Cir. 1999). These four factors are: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing the injunction will burden the defendants less than denying an injunction would burden the plaintiffs and (4) the effect, if any, on the public interest." *Cent. Me. Power Co. v. Me. Comm'n on Governmental Ethics*, 144 F.4th 9, 2025 WL 1911788, 2025 U.S. App. LEXIS 17168, at *16 (1st Cir. July 11, 2025) (citation omitted). "While all these factors must be weighed, the cynosure of this four-part test is more often than not the movant's likelihood of success on the merits." *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 115 (1st Cir. 2006) (citing *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993) ("The sine qua non of [the four-factor] formulation is whether the plaintiffs are likely to succeed on the merits.")). The First Circuit has held that in trademark cases, "the key issue is the likelihood of success on the merits because the other decisions will flow from that ruling." *Keds Corp. v. Renee Intern. Trading Corp.*, 888 F.2d 215, 220 (1st Cir. 1989).

In this case, all four factors weigh in favor of the issuance of a preliminary injunction.

**B.    Likelihood of success on the merits**

"A trademark includes any 'word, name, symbol, or device' used to 'identify and distinguish' goods. 15 U.S.C. § 1127. Though trademark rights may be established under the Lanham Act or common law, the right is conditioned upon use [of the mark] in commerce' in both circumstances. *Gen. Healthcare Ltd. v. Qashat*, 364 F.3d 332, 335 (1st Cir. 2004). Only the 'bona fide' use of a mark will establish such a right; token uses that 'merely' aim 'to reserve a right in a mark' will not suffice. *See* 15 U.S.C. § 1127 (defining 'use in commerce' as 'bona fide use of a mark in the ordinary course of trade')." *To-Ricos, Ltd. v. Productos Avícolas del Sur, Inc.*, 118 F.4th 1, 10 (1st Cir. 2024).

There is no dispute as to the fact that González has never used the Marks **herself**. In her July 24, 2025 cease and desist letter, González essentially admits this. See Docket No. 1-4 ("Although Mr. Ayala was the performing artist **who publicly used** some of the Marks, he intentionally assigned those marks to El Cartel so that it could manage, administer, and commercialize his artistic career and related intellectual property, including revenues derived from branding, merchandising, and entertainment services."). Her claim for alleged infringement of the Lanham Act stems not from her personal ownership of the Marks at issue, but from the fact that El Cartel and not Ayala is allegedly the current owner of the Marks and from the fact that she allegedly has a 50% ownership interest in El Cartel. This contention, albeit expressly denied—given the fact that Ayala at all relevant times has been 100% shareholder of El Cartel—does not provide González with any rights to the Marks themselves nor any entitlement to preclude Ayala from freely using them.

As noted by the Supreme Court of Puerto Rico, "[a] trademark cannot be sliced up and ownership of pieces of it apportioned among independent entities." *Colón Vázquez v. Báez Pérez*, 214 P.R. Dec. 1062, 1088 (2024). *See also*, *BSP Agency LLC v. Katzoff (In re KG Winddown, LLC)*, 632 B.R. 448, 489 (Bankr. S.D.N.Y. 2021) ("A trademark 'is a very unusual and delicate kind of property,' and must be assigned in full or not at all.") (quoting 1 *McCarthy on Trademarks & Unfair Competition* § 2:15).[1]

"[I]n the case of joint endeavors, where prior ownership by one of several claimants cannot be established, the legal task is to determine which party 'controls or determines the nature and quality of the goods which have been marketed under the mark in question.'" *Bell v. Streetwise Records, Ltd.*, 640 F. Supp. 575, 580 (D. Mass. 1986) (quoting *In re Polar Music Int'l AB*, 714 F.2d 1567, 1571 (Fed. Cir. 1983)). In *Ligotti v. Garolfalo*. 562 F. Supp. 2d 204 (D.N.H. 2008), the District Court of New Hampshire addressed the issue of trademark ownership in the context of a mark closely tied to an individual's persona. Applying the framework set forth in *Bell* the court emphasized that ownership of a mark vests on who controls the characteristics or qualities that the public associates with the mark. Thus, when a trademark is inextricably linked to an individual's performance, style, and personal reputation, ownership rights are more likely to vest in that individual.

"To prevent all use of [a person's personal name] is to take away his identity; without it he cannot make known who he is to those who may wish to deal with him; and that is so grievous an injury that courts will avoid imposing it, if they possibly can." *Warden v. Falk*, No. 11-2796,

---

[1] It must also be noted that, regardless of any ownership interest González may have over the dissolved entity El Cartel (which is denied), the interest of a shareholder is not over any asset in particular, but is a general right to participate in the earnings of the corporation. Carlos Díaz Olivo, *Corporaciones* 148 (Publicaciones Puertorriqueñas, Inc., Mayagüez, Puerto Rico, 1999). *See also*, *Miramar Marine, Inc. v. Citi Walk Dev. Corp.*, 198 P.R. Dec. 684, 718 (2017).

2011 U.S. Dist. LEXIS 82956, at *27 (E.D. Pa. July 27, 2011) (quoting *Societe Vinicole De Champagne v. Mumm*, 143 F.2d 240, 241 (2d Cir. 1944)).

As mentioned, Gonzalez's own cease and desist letter admits that any trademark rights regarding the Marks involve Ayala, as user of the Marks, and plaintiff El Cartel. González does not contend that neither Ayala nor El Cartel have ever assigned any interest regarding the Marks to González in her personal capacity.

Irrespective of how the community property between Ayala and González ends up being divided in other pending legal proceedings,[2] it is clear that González does not have any personal rights to the Marks, and cannot avail herself of the Lanham Act or proceedings before the TTAB to enjoin Ayala from "any use, commercialization, exploitation, assertion of sole ownership or control of" the Marks, as her July 24, 2025 cease and desist letter demands and filings before the TTAB purport to do.

As a matter of fact, González's apparent position is contrary to a recent decision issued by the Puerto Rico Supreme Court in the trademark context in *Colón Vázquez v. Báez Pérez*, 214 P.R. Dec. 1062 (2024). In *Colón Vázquez*, interpreting both the Lanham Act and local Puerto Rico trademark law, the Supreme Court of Puerto Rico held that, if a corporation owns a trademark and that corporation is dissolved, the corporation **continues** to be the owner of the trademark even after dissolution. *Id*. at 1087.

The *Colón Vázquez* court further held that the ownership rights to a mark cannot be "fragmented" by splitting the trademark up amongst the different investors, partners and/or owners

---

[2] As mentioned, the division of the community property remaining after the divorce of Ayala and González is pending adjudication in the case of *Mireddys González Castellanos v. Ramón Luis Ayala Rodríguez*, Civil No. CA2025CV01610, before the Court of First Instance of the Commonwealth of Puerto Rico, Carolina Superior Part. This Court may take judicial notice of the pendency of said case pursuant to Fed.R.Evid. 201.

of the corporation, because doing so would run afoul of a trademark's goal, which is to have a distinctive quality. *Id*. at 1088.

Accordingly, the *Colon-Vázquez* court rejected the plaintiffs' contention that they were the owners of the trademark because they were partners in the corporation. The court held that the corporation, despite having been dissolved, continued to be the owner of the trademark. Assuming that El Cartel is still the owner of the Marks (which as we will see below is not the case), any interest in the Marks, even after dissolution, would remain with El Cartel. Hence, González has no personal interest in the Marks and cannot avail herself of the Lanham Act or proceedings before the TTAB to preclude the use of the Marks by Ayala, with the chilling effect over the Marks and irreparable harm this would cause, as further detailed below. The right with respects to the marks rested in El Cartel Inc. Presuming, for the sake of argument, that even if Gonzalez could have some interest, it certainly isn't over the mark but merely as to the economic component in the legal entity. At most, any claim would relate to the civil fruits of the marriage or the income generated by the entity during the marriage—not to ownership or control of the Marks. Notably, despite administering El Cartel for decades, González accounted for no trademark-related income or valuation in the entities through December 2024. Regardless of any potential pursuit of an economic interest in the entity by Gonzalez, the above stated conclusion is supported by Article 512 of the Civil Code, P.R. Laws Ann. tit. 31 § 6964 ("Rights inherent to a person are those created, recognized, or received by reason of the identity and individuality of the spouse who holds or receives the rights, or based on their personal qualities. Although these rights retain their highly personal character, the fruits or periodic earnings accrued during the marriage are common and joint property, unless otherwise provided by law.")

In any event, all and any interest in the marks "Daddy Yankee" and "DY," that El Cartel could have had, have been assigned back to Ayala by El Cartel upon its dissolution. In other words, ownership of the Marks and actual use of the Marks have fused into Ayala as the artist known around the world as "Daddy Yankee" and "DY."

Although Ayala denies that González ever personally held any shares of El Cartel, such a determination is irrelevant to the relief requested herein, which involves the right to use the Marks under Trademark law. There is no authority for the proposition that González has a personal proprietary right over the Marks themselves. Hence, González cannot avail herself of the Lanham Act or proceedings before the TTAB in order to assert a personal proprietary interest in the Marks vis-à-vis Ayala, who is the only user of the Marks, whether originally or as assignee of El Cartel as a result of its dissolution.

### C. Ayala and the Marks by which he is known will suffer irreparable injury if the injunction is not granted and such injury outweighs any harm which granting injunctive relief would inflict on González.

The First Circuit measures irreparable harm on "a sliding scale, working in conjunction with a moving party's likelihood of success on the merits," *Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009), such that "[t]he strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown." *Massachusetts Coal. of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness of Com. of Massachusetts*, 649 F.2d 71, 75 (1st Cir. 1981). In this case, the likelihood of success on the merits of Ayala's claim is undeniable: González simply does not have any personal right or interest in the Marks and cannot avail herself of the Lanham Act or proceedings before the TTAB in order to preclude Ayala from using the Marks in commerce. In these circumstances, Ayala's burden of showing irreparable harm is reduced. Nevertheless, such burden is still met in this case.

In the Trademark context, "an owner may lose rights to a trademark once they stop using it in commerce." *To-Ricos, Ltd. v. Productos Avícolas del Sur, Inc.*, 118 F.4th 1, 10 (1st Cir. 2024) (citing *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146-47 (2d Cir. 2007)). "An abandoned mark returns to the public domain, where it may 'be appropriated for use by other actors in the marketplace, in accordance with the basic rules of trademark priority.'" *Id.* (quoting *ITC*, 482 F.3d at 147).

When evaluating a preliminary injunction request involving trademarks, "[t]he fact that [the] plaintiff has had the symbol of its reputation placed in the hands of another is irreparable injury." *Karle v. Rag Place, Inc.*, No. 2:24-cv-10986-AH-(MARx), 2025 U.S. Dist. LEXIS 123190, at *18 (C.D. Cal. May 15, 2025) (citation omitted). "The injury is to plaintiffs [sic] interest in having exclusive control over the symbol of its own reputation. The irreparable harm is the damage which be will done to plaintiff's mark itself." *Quality Semiconductors, Inc. v. Qlogic Corp.*, No. C-93 20971 JW EAI, 1994 U.S. Dist. LEXIS 7101, at *12 (N.D. Cal. May 13, 1994) (citations omitted).

"For the purpose of an injunction, '"[i]rreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither 'calculable nor precisely compensable'". *CFE Racing Prods. v. BMF Wheels, Inc.*, 793 F.3d 571, 596 (6th Cir. 2015) (citations omitted). "By its very nature injury to goodwill and reputation is not easily measured or fully compensable in damages". *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 20 (1st Cir. 1996). "Accordingly, this kind of harm is often held to be irreparable". *Id.*

Ayala has built an internationally recognized brand over decades, anchored in the marks "Daddy Yankee" and "DY." These marks are not mere identifiers—they are the essence of his

artistic persona and the foundation of his reputation. They have been used continuously in commerce to promote his music, live performances, and related endeavors, and they are inseparable from his public identity. In today's entertainment industry, where branding and social media presence dictate success, uninterrupted use of these marks is not optional—it is indispensable.

The timing of this dispute underscores the gravity of the harm. Ayala is scheduled to appear at major public events in the coming weeks, including the **Premios Billboard on October 23, 2025**, and he has multiple ongoing business ventures tied to his image. Every one of these opportunities depends on his ability to use the "Daddy Yankee" and "DY" marks without interference. If González succeeds in restricting Ayala's use of these marks, the damage will be immediate and catastrophic: Ayala will lose control over the symbols of his reputation, creating confusion among fans, partners, and the public. Courts have repeatedly held that such loss of control constitutes irreparable harm because it cannot be calculated or compensated with money.

The risk extends beyond confusion. Trademark law is clear: failure to use a mark in commerce can lead to abandonment, returning the mark to the public domain where it may be appropriated by others. For an artist of Ayala's stature, this is not a theoretical concern—it is an existential threat. Decades of brand equity could vanish overnight, and the marks that define his career could fall into the hands of third parties. No monetary award can restore the trust, recognition, and goodwill that would be destroyed.

Unless this Court intervenes, Ayala faces irreparable harm on multiple fronts: loss of exclusive control over his marks, erosion of goodwill, confusion in the marketplace, and the looming risk of abandonment. These injuries strike at the heart of his identity as an artist and cannot be undone. Injunctive relief is not only warranted—it is imperative.

The irreparable harm to Ayala a/k/a "Daddy Yankee" and "DY" from being unable to use his own artistic name under threat of suit outweighs any harm that granting the injunctive relief requested could inflict on González. In this connection, the Court must balance "the hardship that will befall the nonmovant if the injunction issues . . . with the hardship that will befall the movant if the injunction does not issue." *Mercado-Salinas v. Bart Enter. Intern., Ltd.*, 671 F.3d 12, 19 (1st Cir. 2011). As a matter of fact, the use by Ayala of his artistic names "Daddy Yankee" and "DY" would cause no harm at all to González. As previously explained, any credit or portion of the fruits ("frutos") generated by El Cartel (including from the use of the Marks by Ayala) prior to the dissolution of the marriage are the object of a pending proceeding in state court. Ayala's prospective use of his artistic name does not affect such proceedings nor González's rights in any way. González's demand that Ayala cease and desist from any use of the Marks, particularly his artistic names "Daddy Yankee" and "DY," has no justification whatsoever and only harms Ayala's artistic career and the Marks themselves. Moreover, by requesting an extension of time to oppose the registration of the Marks before the TTAB, Gonzalez has clearly manifested her intent to challenge Ayala's trademark rights and to preclude him from securing protection for and freely using his artistic identity in commerce.

### D.    Public interest

"In trademark cases, the public interest is the public's right not to be deceived or confused." *Warner Bros. Entm't, Inc. v. The Global Asylum, Inc.*, No. CV 12-9547 PSG CWX, 2012 U.S. Dist. LEXIS 185695, 2012 WL 6951315, at *23 (C.D. Cal. Dec. 10, 2012); see also, *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F. App'x 633, 636 (9th Cir. 2013) ("An injunction that prevents consumer confusion in trademark cases, as this injunction does, serves the public interest."). "In trademark cases, the public interest almost always favors the granting of otherwise

'appropriate injunctions.'" *Pub. Impact, LLC v. Bos. Consulting Grp., Inc.*, 169 F. Supp. 3d 278, 296 (D. Mass. 2016) (citations omitted).

The public interest in this case will not be affected in any way by the grant of an injunction. To the contrary, denial of the injunctive relief requested and the chilling effect González's actions can have on the use by Ayala of his own artistic or trade names could certainly cause deception or confusion, to the extent that "Daddy Yankee " and "DY" cease to be associated with Ayala, are appropriated by third parties as a result of lack of use or Ayala is put in the position to have to change his artistic name in order to continue his artistic career.

**WHEREFORE**, plaintiffs respectfully request that the Court grant this motion and enter a preliminary injunction (1) enjoining González from further asserting ownership rights over the marks "Daddy Yankee" and "DY;" and (2) enjoining González from further attempting to preclude the use by Ayala, in his personal capacity or as President of El Cartel, of the marks "Daddy Yankee" and "DY," including but not limited to the filing of additional documents before the TTAB, in addition to any other remedy the Court deems just and proper.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, on this 6 day of October, 2025.

**I HEREBY CERTIFY** that on this same date I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send electronic notification of such filing to all counsel of record.

**ANTONETTI MONTALVO & RAMIREZ-COLL**
*Counsel for Plaintiff Ayala*
P. O. Box 13128
San Juan, PR  00907
Tel. (787) 977-0312
Fax: (787) 977-0323

**s/ Jose L. Ramirez- Coll**
JOSE L. RAMIREZ-COLL

USDC-PR No. 221702
jramirez@amrclaw.com

*Attorney for Plaintiff El Cartel*



PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433

**_s/JUAN J. CASILLAS-AYALA_**
JUAN J. CASILLAS-AYALA
USDC-PR No. 218312
jcasillas@cstlawpr.com

**_s/VÍCTOR O. ACEVEDO-HERNÁNDEZ_**
VICTOR O. ACEVEDO-HERNÁNDEZ
USDC-PR No. 227813
vacevedo@cstlawpr.com

s/**_JUAN C. NIEVES-GONZÁLEZ_**
JUAN C. NIEVES-GONZÁLEZ
USDC-PR No. 231707
jnieves@cstlawpr.com